IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **AARON FILLMORE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Civil No. **97-844-CJP**[1] |
| ) | |
| **THOMAS F. PAGE, et al.,** ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**PROUD, Magistrate Judge:**

A final pretrial conference was held April 15, 2005, and a final pretrial order, drafted by the parties, was entered. **(Doc. 251).** Despite the fact that this case has already been tried once and is before the Court only on a limited remand, the parties have raised numerous issues in the final pretrial order which must be determined before trial. Incredibly, the parties disagree on the nature of the case, and whether there is to be a jury or bench trial. This order should resolve all pending issues in advance of the August 1, 2005 trial.

**Synopsis of Procedural History**

Plaintiff Aaron Fillmore is in the custody of the Illinois Department of Corrections. At all times relevant to the above-captioned suit he was housed at Menard Correctional Center. Plaintiff's Second Amended Complaint alleges that on February 4, 1997, multiple prison officials subjected him to cruel and unusual punishment in violation of the Eighth Amendment,

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), upon the consent of the parties, U.S. District Judge J. Phil Gilbert referred this case to U.S. Magistrate Judge Clifford J. Proud for final resolution. **(Docs. 112, 113 and 126).**

1

and/or battery, during the course of moving him and three other inmates from the West Cellhouse to the Segregation Unit. **(Doc. 53).**

As a consequence of a discovery sanction, claims against defendants Page and Cleland had to be tried separately from the other defendants. **(Docs. 64 and 191).** Page and Cleland were tried before a jury. Page was dismissed at the close of plaintiff's case-in-chief, pursuant to Federal Rule of Civil Procedure 50. **(Doc. 218).** The jury returned a verdict in favor of Cleland. **(Doc. 219).**

Defendants Wilson, Chamness, Shemonic, Best, McCall, Jack, Higgins, Henderson, Scott and Potts filed a "Brief in Support of an Entry of Judgment in Favor of Defendants and Against Plaintiff;" and plaintiff filed "Plaintiff's Brief in Opposition to Directed Verdict." **(Docs. 230 and 231).** The parties jointly filed "Stipulated Trial Testimony." **(Doc. 232).** The Court construed the defendants' brief as a motion for "judgment on partial findings," pursuant to Federal Rule of Civil Procedure 52(c), and entered judgment in favor of all remaining defendants. **(Docs. 233 and 234).**

Plaintiff appealed. In *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004), the appellate court concluded:

> Out of this entire appeal, therefore, we have AFFIRMED the judgments in favor of Henderson, Jack, Higgins with respect to the claims arising out of the transfer; the judgment in favor of Higgins with respect to the strip search; the claims against Wilson, and Page with respect to failure to intervene; the claims against Chamness, Shemonic, Best, McCall, Potts, and Scott for their action or inaction during the transfer; the jury verdict in favor of Cleland; and the summary judgments for Grah and Mifflin. We REVERSE and REMAND the court's dismissal of Fillmore's claims against the unnamed defendants who allegedly beat him in the Segregation Unit for further proceedings to ascertain whether any of the named defendants was involved in the beating, and if the specific actors can be identified, for further proceedings on that claim. If other persons administered

the beating, the court must decide whether the statute of limitations bars Fillmore's claims against any or all of them. Each party shall bear its own costs on appeal.

**358 F.3d at 510-511.**

### Nature of the Case

The appellate court decision actually identified *two* incidents to be addressed:

1. "Fillmore alleges that upon his arrival at the Segregation Unit, one of the officers pushed his face against the bars of a caged area immediately outside the Segregation Unit, although he cannot identify which officer did so;" and

2. "Upon reaching the cell, rather than waiting to uncuff Fillmore until he was safely locked inside the cell, Cleland uncuffed Fillmore outside the cell and then shoved him into the cell and onto the floor and began kicking and punching him. Fillmore immediately assumed the fetal position in an attempt to ward off the assault, but he saw at least two orange- clad legs joining in the beating."

***Fillmore*, 358 F.3d at 501.**

In any event, plaintiff has now voluntarily dismissed his Eighth Amendment claim that excessive force was used outside the segregation unit. **(Doc. 251, p. 3).**

Defendants, consistent with this Court's most recent order delineating which defendants and issues remained for trial **(Doc. 249)**, succinctly assert that the issue is whether any of the remaining defendants– Wilson, Chamness, Shemonic, Best, McCall, Jack, Higgins, Henderson, Scott and Potts– "beat plaintiff in his segregation cell," in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment.  **(*See* Doc. 251, p. 3).**

Plaintiff delineates four issues and/or theories of liability:

1. Defendants Wilson, Shemonic, Best, McCall, Jack, Henderson, Scott, Higgins and Potts– members of the Tactical Team–  directly used

3

>   excessive force against plaintiff, in violation of the Eighth Amendment;
>
> 2. Defendants Wilson, Shemonic, Best, McCall, Jack, Henderson, Scott, Higgins and Potts– members of the Tactical Team– were present when excessive force was used against plaintiff but did not intervene to protect plaintiff, all in violation of the Eighth Amendment;
>
> 3. Defendant Chamness, the videographer, intentionally chose not to tape plaintiff's entire trip from the West Cellhouse to his cell in the Segregation Unit, intending that a member(s) of the Tactical Team would use excessive force against plaintiff, or with the intent to create a danger of excessive force being used, all in violation of the Eighth Amendment; and
>
> 4. Defendant Wilson, the lieutenant commanding the Tactical Team, adopted policies allowing Team members to obscure their identities with the intent to create a danger that excessive force would be used.

(*See* Doc. 251, p. 2).

**Wilson, Shemonic, Best, McCall,**
**Jack, Henderson, Scott, Higgins and Potts:**

There appears to be no dispute that the first two issues specific to Wilson, Shemonic, Best, McCall, Jack, Henderson, Scott, Higgins and Potts– the direct use of force and/or the failure to intervene– were raised in the initial proceedings and on appeal, and fall within the appellate court's mandate. However, the issues specific to Chamness and Wilson are subject to debate.

**Chamness and Wilson:**

Plaintiff ignores the fact that plaintiff has already had a full "bite at the apple" in the district court, and the Court of Appeals remanded for a *limited* purpose. **Fillmore**, **358 F.3d at 500 and 510-511.** Accordingly, the law of the case doctrine is arguably applicable. Issues that were decided in the initial proceding, and issues that could have been raised on appeal but were not, are now precluded. **See Roboserve, Inc. v. Kato Kagaku Co., Ltd.**, **121 F.3d 1027, 1031-**

4

1032; and *Schering Corp. v. Illinois Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996).

Plaintiff has apparently forgotten that all official capacity claims were dismissed long ago. **(Doc. 125, pp. 3-4 and 7).** That fact is in no way altered by the appellate court's comment, "If in the final analysis the court concludes that the prison has a policy that makes identification virtually impossible, it may be that Fillmore will have highlighted a different kind of problem relating to the broader policies the prison officials have adopted in their official capacities." Therefore, the issue regarding Wilson's alleged policy of anonymity fails insofar as it may be asserted as an official capacity claim. For the following reasons, the Wilson issue and the Chamness videotaping issue also fail as individual capacity claims.

Plaintiff has not filed a third amended complaint, and the Second Amended Complaint **(Doc. 53)** and final pretrial order controlling the initial proceedings **(Doc. 179)** do not reflect that claims regarding Chamness's failure to videotape and Wilson's policies are properly before the Court.

Count One of the Second Amended Complaint, consistent with the liberal notice pleading standard, references the Eight Amendment "right to be free from the infliction of intentional harm by prison officials," and alleges "[d]efendants' unprovoked attack upon plaintiff constitutes the willful infliction of pain in violation of plaintiff's right to be free from arbitrary punishment." **(Doc. 53, p. 8).** The "Parties" section of the Second Amended Complaint characterizes Wilson and Chamness as Tactical Team members "who participated in the beating of plaintiff." **(Doc. 53, p. 4, ¶ 11).** In the section of the Second Amended Complaint captioned "Defendants' Beating of Plaintiff," plaintiff alleges that "the officers stopped filming Mr. Fillmore." **(Doc. 53, p. 6, § 22).** Relative to Wilson's alleged policies, the "Parties" section of the Second Amended

Complaint specifically attributes the anonymity of the Tactical Team officers to the Illinois Department of Corrections, which is not a named defendant. **(Doc. 53, pp. 3-4, ¶¶ 8-9).**

Like Count One of the Second Amended Complaint, the final pretrial order controlling the initial proceedings states the nature of the case in succinct terms– the defendants beat plaintiff. **(Doc. 179, p. 2).** Chamness is identified as possibly being the individual operating the videotape, but that is in the context of agreeing that the videotape is maintained at the prison. **(Doc. 179, p. 3, ¶ 8).**

Plaintiff did not raise the Chamness videotape theory of liability or the Wilson anonymity policy issue in his Trial Brief **(Doc. 204)**, Brief in Opposition to Directed Verdict **(Doc. 231)**, Stipulated Trial Testimony **(Doc. 232)**; and, after the Court issued its ruling, plaintiff did not file a motion for reconsideration or for new trial.[2]

The Court of Appeals recognized that plaintiff has pursued three theories of liability: (1) ordering abuse; (2) perpetrating abuse; or (3) failing to intervene to stop abuse. ***Fillmore*, 358 F.3d at 502.** Chamness's failure to videotape plaintiff's entire journey and Wilson's alleged anonymity policy were not issues raised on appeal (because they were not raised before the district court). For that very reason, plaintiff may argue that the law of the case doctrine is inapplicable.

---

[2]Plaintiff did argue in his Brief in Opposition to Directed Verdict **(Doc. 231)** that: (1) "Mr. Chamness first pointed the camera at the back of one of the tactical team officers and then at the ceiling, ensuring the search of Mr. Fillmore would not be recorded;" and (2) "Defendant Chamness failed to act in his capacity of Internal Affairs officer to stop the abuse of plaintiff and, during the strip search, joined in the scheme more directly by ensuring that defendants' improper conduct would not be filmed." **(Doc. 231, pp. 10 and 18).** The Court of Appeals recognized that this theory of liability was limited to the strip search segment of plaintiff's journey from the West Cellhouse to the Segregation Unit and specifically held that affirmed judgment in favor of Chamness. ***Fillmore*, 358 F.3d at 505-506.**

Even if the law of the case doctrine is inapplicable, the initial final pretrial order controls the subsequent course of action unless modified by a subsequent order, and only to prevent manifest injustice.  **Fed.R.Civ.P. 16(e);** *see also **Vaughn v. King,** **167 F.3d 347, 352 (7th Cir. 1992) (final pretrial order supercedes pleadings).**

> In deciding whether to permit a modification of a pre-trial order, the district court should consider points like (1) the prejudice or surprise to the nonmoving party, (2) the ability of the party to cure the prejudice, (3) the extent of the disruption to the orderly and efficient trial of the case or other cases in the court, and (4) the bad faith and willfulness in failing to comply with the court's order.

***Ryan v. Illinois Department of Children and Family Services*, 185 F.3d 751, 763 (7th Cir. 1999).**  Since many claims and defendants have been dismissed since the initial final pretrial order was entered, a second final pretrial order does seem in order.  However, plaintiff's inclusion of the Chamness and Wilson issues amounts to an end-run around the fact that those issues were not included in the initial final pretrial order, and were not delineated in a third amended complaint– much to the surprise of the Court and the defendants.  Plaintiff is attempting to keep the defendants on a litigation treadmill.  The Court does not perceive any manifest injustice in not allowing additional claims to be added.  It has been over seven years since this action was initiated; justice delayed is justice denied.  This Court intends to proceed within the narrow confines of the appellate court's mandate, and to allow only amend the final pretrial order accordingly.  The Chamness and Wilson issues will not proceed.

### Uncontroverted Facts

Paragraphs 10, 11, 12, 13 and 14 of the Uncontroverted Facts section of the (second) final pretrial order are in dispute. Each paragraph will be addressed in turn.

**Paragraph 10:**

Paragraph 10 pertains to corporal punishment being prohibited by the laws of the State of Illinois and Illinois Department of Corrections regulations. Defendants object that those facts are irrelevant and not properly included in the Uncontroverted Facts section of the final pretrial order.

Whether the laws of the State of Illinois or Illinois Department of Corrections regulations were violated is legally irrelevant to liability for an Eighth Amendment constitutional violation. Nevertheless, the violation of state laws and prison regulations often is introduced as evidence of a defendant's knowledge of wrongdoing. Of course, the introduction of such evidence in turn leads to a jury instruction emphasizing that the Eighth Amendment is not concerned with such violations (and in a bench trial the judge is obviously aware of the applicable law). Accordingly, such facts are not entirely out of place in a final pretrial order. The Court simply does not see the harm in allowing paragraph 10 to remain in the final pretrial order, particularly since defendants do not dispute that the statements are legally correct, and there will be no jury. Therefore, defendants' objection to paragraph 10 is overruled.

**Paragraphs 11 and 12:**

Paragraph 11 states: "Plaintiff claims that Derek Cleland was one of the individuals who beat him in his segregation unit cell on February 4, 1997." Paragraph 12 states: "A jury has already determined that Derek Cleland did not violate plaintiff's constitutional rights." Plaintiff does not want the jury advised of these facts.

Plaintiff's objection is not well taken since the parties have waived their right to a jury trial. In any event, plaintiff's belief that Cleland beat him is res gestae– inseparable from the claim(s) still at bar. Therefore, plaintiff's objection to paragraph 11 is overruled. With respect to paragraph 12, the Court is mindful of the fact that Cleland was found not liable by a jury, but that the jury verdict did not detail whether the jury believed Cleland was not present at all, or that his actions did not violate the Eighth Amendment. Therefore, plaintiff's objection to the inclusion of paragraph 12 is overruled.

**Paragraph 13:**

Plaintiff desires the inclusion of paragraph 13, which states that it is undisputed that, other than the defendants, there were no other officers in the Segregation Unit wearing orange jumpsuits during the time period plaintiff was allegedly beaten. Defendants dispute that assertion of fact. Obviously, if the parties cannot agree on a fact, it cannot be characterized as an undisputed fact. Therefore, paragraph 13 is deemed stricken from the final pretrial order.

**Paragraph 14:**

The defendants desire the inclusion of paragraph 14, which states, "Plaintiff has no evidence that any of the defendants were in his segregation unit cell on February 4, 1997." Plaintiff disagrees. Again, if the parties cannot agree on a fact, it cannot be characterized as an undisputed fact. Therefore, paragraph 14 is deemed stricken from the final pretrial order.

**Agreed to Issues of Law**

Because the parties do not share the same understanding of the evidence and issues to be tried, they do not agree on the issues of law– paragraphs 2-7 of the Agreed to Issues of Law section of the final pretrial order. In addition, the parties do not agree on whether there is going to be a jury trial or bench trial, so they do not agree on who will ultimately decide liability in this case– the question presented in paragraph 8 of the Agreed to Issues of Law section of the final pretrial order. It would normally suffice to say that he Court will decide any issue of law that does arise, regardless of whether the parties foresaw such an issue in the final pretrial order.

**Paragraphs 2-7:**

The Court's analysis of which issues will proceed to trial renders the issues presented in paragraphs 3-7 moot, and they are deemed stricken from the final pretrial order. Paragraph 2 hinges upon what proof is offered to connect the defendants to the beating, so it remains to be seen whether paragraph 2 ultimately must be decided.

**Paragraph 8:**

Paragraph 8 raises whether there will be a jury trial or bench trial. The appellate court has already found that the parties waived their right to a jury trial. ***Fillmore*, 358 F.3d at 503.** Furthermore, no amended complaint was filed, which could have possibly opened the door to a jury demand on any new claims. *See* **Fed.R.Civ.P. 38(b).**

Federal Rule of Civil procedure 39(b) is loosely applicable:

> [N]otwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

**Fed.R.Civ.P. 39(b) (emphasis added).** However, plaintiff has not filed a motion requesting a jury. Rather, plaintiff has waited until the final pretrial conference to raise the issue. The

10

Advisory Committee Notes relative to the 1993 Amendments to Rule 38 explain: "For proper scheduling of cases, it is important that jury demands not only be served on other parties, but also be filed with the court." Plaintiff's failure to properly seek to reinstate his jury demand is fatal.  *See Lutz v. Glendale Union High School*, **403 F.3d 1061, 1067 (9th Cir. 2005) (jury trial was held despite waiver of jury demand; the verdict was vacated on appeal).** Therefore, "round 2" of this case will be a bench trial.

      **IT IS THEREFORE ORDERED** that the (second) final pretrial order **(Doc. 251)** shall be construed in accordance with the this order.

      **IT IS SO ORDERED.**

      **DATED: June 6, 2005**

      s/ Clifford J. Proud
      **CLIFFORD J. PROUD**
      **U. S. MAGISTRATE JUDGE**